NUMBERS 13-08-00651-CR and 13-08-00694-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ARMANDO DAVILA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 148th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Justice Vela



 In separate plea hearings, (1) appellant, Armando Davila, pleaded guilty to the offense
of assault-family violence, a third-degree felony, (2) see Tex. Penal Code Ann. §
22.01(b)(2)(A) (Vernon Supp. 2009), and felony driving while intoxicated, a third-degree
felony (felony DWI). (3) See id. § 49.09(b)(2). In each case, the trial court sentenced him to
five years' imprisonment, suspended imposition of the sentences, and placed him on five
years' community supervision. The trial court imposed a $500 fine for the offense of
assault-family violence and a $1,500 fine for the offense of felony DWI. 

 The State subsequently filed separate motions to revoke community supervision for
each case. The revocation motion pertaining to the felony DWI case alleged that Davila
violated the terms and conditions of community supervision by: 1) committing the offenses
of attempted assault on a public servant and resisting arrest, search or transport; 2) failing
to report to his community-supervision officer for the month of July 2008; 3) failing to pay
the required court costs and fine; and 4) failing to report for the mental-health specialized
caseload for the month of July 2008. Davila pleaded "not true" to the allegations of
attempted assault on a public servant and that he failed to report for the mental-health
specialized caseload during July 2008. He pleaded "true" to the remaining allegations. 
The revocation motion pertaining to the assault-family violence case alleged that Davila
violated the terms and conditions of community supervision by committing the offense of
attempted assault on a public servant. (4) Davila pleaded "not true" to the allegation.

 After hearing testimony, the trial court revoked Davila's community supervision in
both cases, and in each case, assessed concurrent three-year prison terms. In this
consolidated appeal, (5) Davila argues that 1) the trial court abused its discretion by revoking
his community supervision, and 2) the punishment imposed violated his Eighth Amendment
right against cruel and unusual punishment. (6) We affirm the judgments as modified.

I. Revocation Hearing


 On October 8, 2008, the trial court heard the revocation motions for both cases in
a single hearing. After Davila pleaded to the allegations in both revocation motions, the
trial court heard testimony from both sides.

A. State's Evidence

 John Beattie, who worked as a community-supervision officer and a specialized
mental-health officer for the Nueces County Adult Probation Department, supervised Davila
under the specialized mental-health caseload. He testified that Davila did not report to him
in the month of July 2008. He stated the conditions of Davila's community supervision
required Davila "to report to me at least two times that month [July 2008] in person and one
time by telephone or through a--his mental health care physician or caseworker." 

 Polanco Tatman testified he was a public servant and worked as a corrections
officer for the Nueces County Sheriff's Office. His duties at the county jail included
escorting the nurse, who administered medications to the inmates. On September 6, 2008,
he was on duty, escorting a nurse, who was giving medication to Davila, who was in a jail
cell. Officer Tatman opened the door to Davila's cell, allowing the nurse to give Davila
some medication. After the nurse left, Officer Tatman was closing the door to Davila's cell
when Davila stopped the door from closing and swung his fist at Officer Tatman. Davila
did not make contact with Officer Tatman. When the prosecutor asked Officer Tatman,
"And if you hadn't gone out of the way, would it have contacted you?", he said, "Yes,
probably will." (7)

 Christopher Flores, a corrections officer for the Nueces County Sheriff's Office,
testified that on September 6, 2008, he accompanied Officer Tatman when Davila was
receiving the medication. Officer Flores stated that he saw Davila "swing at" Officer
Tatman.

B. Defense Evidence

 Davila denied that he attempted to hit Officer Tatman and testified that Officer
Tatman assaulted him. When defense counsel asked Davila about the allegation that he
failed to report for the mental-health specialized caseload for the month of July, he said
that he "was having problems with alcohol" and that he was hospitalized twice that month. 
He testified that he took medications for his anxiety, depression, and schizophrenia. He
stated that on September 6, 2008, he was given the medication, Trazodone, to help him
sleep. He stated that after taking that medication, he would go to sleep in about an hour.


II. Revocation of Community Supervision


 In issue one, Davila contends the trial court abused its discretion by revoking his
community supervision and imposing the three-year sentences without considering his
mental-health issues. 

A. Standards of Review

 We review the decision to revoke community supervision for an abuse of discretion. 
Rickels v. State, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The State bears the burden
of showing that the defendant committed a violation of the community-supervision
conditions. Antwine v. State, 268 S.W.3d 634, 636 (Tex. App.-Eastland 2008, pet. ref'd). 
An order revoking community supervision "'must be supported by a preponderance of the
evidence; in other words, that greater weight of the credible evidence which would create
a reasonable belief that the defendant has violated a condition of his probation.'" Rickels,
202 S.W.3d at 763-64 (quoting Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim. App.
1974)). In a revocation case, we review the evidence in the light most favorable to the trial
court's decision. Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

 In our review of a trial court's determination of the appropriate punishment in any
given case, "a great deal of discretion is allowed the sentencing judge." Jackson v. State,
680 S.W.2d 809, 814 (Tex. Crim. App. 1984); Baldridge v. State, 77 S.W.3d 890, 893-94
(Tex. App.-Houston [14th Dist.] 2002, pet. ref'd). It is "the general rule that as long as a
sentence is within the proper range of punishment it will not be disturbed on appeal." 
Jackson, 680 S.W.2d at 814. A trial court will be found to have abused its discretion only
if there is no evidence or factual basis for the punishment imposed. Id.; Benjamin v. State,
874 S.W.2d 132, 135 (Tex. App.-Houston [14th Dist.] 1994, no pet.).

B. Davila's Arguments

 Davila challenges the trial court's decision to revoke his community supervision by
five arguments, (8) which we group into three categories. 

1. Sufficiency of The Evidence To Support The Judgments Revoking Community
Supervision


 Both revocation motions alleged that Davila committed the offense of attempted
assault on a public servant. A person commits assault on a public servant if he or she: 
"(1) intentionally, knowingly, or recklessly causes bodily injury to another, . . . [and] (b) . .
. the offense is committed against: (1) a person the actor knows is a public servant while
the public servant is lawfully discharging an official duty," Tex. Penal Code Ann. §
22.01(a)(1), (b)(1) (Vernon Supp. 2009), "'Public servant' means a person . . . employed,
. . . as one of the following, even if he has not yet qualified for office or assumed his duties: 
(A) an officer, employee, or agent of government; . . . ." Id. § 1.07(41)(A). The penal code
sets out the elements for a criminal attempt: "A person commits an offense if, with specific
intent to commit an offense, he does an act amounting to more than mere preparation that
tends but fails to effect the commission of the offense intended." Id. § 15.01(a) (Vernon
2003). "Intent may be inferred from acts, words and conduct of [the] accused." Hernandez
v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

 Here, the trial court could have determined the following from the evidence: 1) while
Officer Tatman was closing the door to Davila's jail cell, Davila stopped him from closing
the door and swung at him; 2) had Officer Tatman not avoided the swing, he would have
been hit by Davila; 3) at the time of the incident, Officer Tatman was on duty as a public
servant, who was engaged in the lawful discharge of an official duty as an employee for
the Nueces County Sheriff's Office; and 4) at the time of the incident, Davila knew Officer
Tatman was a corrections officer.

 To the contrary, Davila's testimony was that he did not attempt to hit Officer Tatman. 
He also testified that prior to the occurrence of the alleged incident, the nurse had given
him the medication, Trazodone, which caused him to become sleepy.

 At a revocation hearing, the trial court is the sole judge of the credibility of the
witnesses and the weight given to their testimony. Hart v. State, 264 S.W.3d 364, 366
(Tex. App.-Eastland 2008, pet. ref'd). Thus, the trial court could have decided to believe
Officers Tatman and Flores and disbelieve Davila. Viewing the evidence in the light most
favorable to the trial court's decision, we hold that the State proved by a preponderance
of the evidence that Davila, with specific intent to commit the offense of assault on a public
servant, did an act, i.e., swing at Officer Tatman, that amounted to more than mere
preparation, that tended but failed to effect the commission of the intended assault.

 The trial court's finding that Davila committed the offense of attempted assault on
a public servant supported the decision to revoke Davila's community supervision in both
cases. See Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (stating that "one
sufficient ground for revocation will support the court's order to revoke probation."). With
respect to the felony DWI case, Davila pleaded "true" to the allegations that he committed
the offense of resisting arrest, search, or transport, that he failed to report to his
community-supervision officer for the month of July 2008, and that he had not paid the
required fine and court costs. A plea of "true" alone is sufficient to support revocation. 
Jiminez v. State, 552 S.W.2d 469, 472 (Tex. Crim. App. 1977). By entering a plea of "true"
to the allegations in the felony DWI case, Davila cannot challenge the sufficiency of the
evidence to support the revocation in that case. Cole v. State, 578 S.W.2d 127, 128 (Tex.
Crim. App. 1979).

2. Competency to Stand Trial

 Davila argues the trial court did not give proper consideration to his schizophrenic
depression and that a trial court must be alert to the circumstances showing that the
accused does not meet the standards of competency to stand trial.

a. Standard of Review

 We apply an abuse-of-discretion standard when reviewing a trial court's failure to
conduct an inquiry into a defendant's competency to stand trial. Montoya v. State, 291
S.W.3d 420, 426 (Tex. Crim. App. 2009). In determining abuse of discretion, we do not
substitute our judgment for that of the trial court, but rather determine whether the trial
court's decision was arbitrary or unreasonable. Id.

b. Applicable Law

 The competency statute (9) "allows the trial judge to informally determine whether the
behavior of the defendant during a proceeding indicates a lack of rational understanding." 
Id. The Montoya court stated that the bona fide doubt standard is: 


 the proper standard for determining whether a trial court should conduct an
inquiry. If a trial judge has a bona fide doubt about the competency of the
defendant, he or she shall conduct an informal inquiry to determine if there
is evidence that would support a finding of incompetence. A bona fide doubt
may exist if the defendant exhibits truly bizarre behavior or has a recent
history of severe mental illness or at least moderate mental retardation.


Id. at 425. Article 46B.003 provides that a person is incompetent to stand trial if the person
does not have: "(1) sufficient present ability to consult with the person's lawyer with a
reasonable degree of rational understanding; or (2) a rational as well as factual
understanding of the proceedings against the person." Tex. Code Crim. Proc. Ann. art.
46B.003(a)(1) & (2) (Vernon 2006). This statute "specifies the defendant's present ability
. . . . [P]ast mental-health issues raise the issue of incompetency only if there is evidence
of recent severe mental illness, at least moderate retardation, or bizarre acts by the
defendant." Montoya, 291 S.W.3d at 425 (emphasis in original). When evaluating
competency to stand trial, the considerations "include the defendant's level of
understanding of the proceeding and ability to consult with counsel in preparation for the
proceeding. Thus, those who observed the behavior of the defendant at the hearing were
in a better position to determine whether [Davila] was presently competent." Id. at 425-26.

c. Analysis

 During the revocation hearing, but prior to accepting Davila's pleas to the allegations
in the revocation motions, the trial court elicited responses from Davila showing that: 1)
he was twenty-eight years old and had dropped out of high school in the tenth grade; 2)
he had been incarcerated in the county jail for the past two months; 3) he was being
treated for schizoaffective disorder and; 4) during his incarceration, the jail's medical staff
administered medications to him, specifically Lexapro, Geodone, Zyprexa, and Trazodone.
When the trial court asked Davila, "[D]o you feel like you have adjusted to the medication
that they [the jail's medical staff] have been administering to you?" and "Are you able to
focus on this hearing this morning?", he replied, "Yes, ma'am" to both questions. Davila
answered the trial court's questions without difficulty. He understood the State had filed
separate motions to revoke his community supervision in each case, and he understood
the revocation allegations. During his testimony, Davila adequately understood and
responded to questions from both defense counsel and the State. Even though he was
being treated for schizoaffective disorder and testified that he took medications for his
anxiety, depression, and schizophrenia, mental impairment alone does not establish an
accused's inability to consult with defense counsel or understand the proceedings against
him. See Moore v. State, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (stating that "[t]o
raise the issue of competency by means of the defendant's past mental health history,
there generally must be evidence of recent severe mental illness or bizarre acts by the
defendant or of moderate retardation."); Grider v. State, 69 S.W.3d 681, 684 (Tex.
App.-Texarkana 2002, no pet.) (evidence did not show that paranoid schizophrenic's
taking medication, hearing voices, and seeing visions constituted incompetency). We note
that Davila made no outbursts during the revocation proceeding. See Moore, 999 S.W.2d
at 395 (stating that "inappropriate violations of court decorum" evidence an "inability to
communicate with counsel, or factually appreciate the proceedings against him.").

 Furthermore, the record reflects no indication of recent severe mental illness,
moderate retardation, or truly bizarre acts, and there was no suggestion by Davila's
defense counsel, the prosecutor, or the trial court, all of whom saw Davila's behavior at the
revocation hearing, that he appeared unable to understand the proceedings. The record
showed that Davila had the sufficient present ability to consult with his lawyer with a
reasonable degree of rational understanding and had a rational as well as a factual
understanding of the proceedings against him. See Tex. Code Crim. Proc. Ann. art.
46B.003(a)(1) & (2). Giving proper deference to the trial judge's determination based on
her ability to see Davila's behavior, we hold that because the evidence did not raise a
bona-fide doubt about Davila's competence, the trial court did not abuse its discretion by
failing to determine by informal inquiry whether there was some evidence from any source
that would support a finding that Davila was incompetent to stand trial. See Grider, 69
S.W.3d at 685.

3. Mental-Health Treatment While on Community Supervision


 Davila contends he was not provided with the proper treatment for his mental health
while on community supervision, and that such treatment could have prevented the
violations. Condition 10-1 of the terms and conditions of Davila's community supervision
pertaining to the offense of assault-family violence required him to participate in a
specialized "Mental Health Caseload." This condition further required him to complete a
mental-health evaluation and counseling as directed by his specialized mental-health
officer. We note that during the revocation hearing, but prior to accepting Davila's pleas
to the allegations in the revocation motions, the trial court announced that: 1) a motion to
revoke community supervision with respect to the assault-family violence case was filed
on August 8, 2008; 2) Davila appeared in court with reference to that motion on August 22,
2008, at which time the trial court found him "in violation of conditions of community
supervision[;]" and 3) the trial court continued him on community supervision but "ordered
[him] . . . to be placed on the MHMR Art Program" and "ordered [him] to enroll in the . . .
Coastal Bend Out Patient Program." Accordingly, Davila was offered mental-health
services during the term of his community supervision. He does not state which other
mental-health services he needed, nor does he state how these mental-health services
would have kept him from violating the terms and conditions of his community supervision. 
We hold that the trial court did not abuse its discretion either by revoking Davila's
community supervision in both cases or by sentencing him to three years' imprisonment
for each case.

III. Cruel & Unusual Punishment


 In issue two, Davila contends the trial court's sentence violated his Eighth
Amendment right against cruel and unusual punishment. The Eighth Amendment to the
United States Constitution provides that "[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const.
amends. VIII, XIV; see Tex. Const. art. I, § 13. The Eighth Amendment does not require
strict proportionality between the crime and the sentence; rather, it forbids extreme
sentences that are "grossly disproportionate" to the crime. Ewing v. California, 538 U.S.
11, 23 (2003). The precise contours of the "grossly disproportionate" standard are unclear,
but it applies only in "exceedingly rare" and "extreme" cases. See Lockyer v. Andrade, 538
U.S. 63, 73 (2003). Texas courts have traditionally held that, as long as the punishment
assessed falls within the range prescribed by the legislature in a valid statute, the
punishment is not excessive. See Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App.
1973); Trevino v. State, 174 S.W.3d 925, 928 (Tex. App.-Corpus Christi 2005, pet. ref'd);
see also Escochea v. State, 139 S.W.3d 67, 80 (Tex. App.-Corpus Christi 2004, no pet.). (10)

 Davila's sentences fell within the applicable range of punishment. However, that
does not end the inquiry. Texas courts recognize a prohibition against grossly
disproportionate sentences survives under the federal constitution apart from any
consideration whether the punishment assessed is within the statute's punishment range. 
Winchester v. State, 246 S.W.3d 386, 388 (Tex. App.-Amarillo 2008, pet. ref'd); Mullins
v. State, 208 S.W.3d 469, 470 (Tex. App.-Texarkana 2006, no pet.). 

 This Court has recognized that "the viability and mode of application of proportionate
analysis . . . has been questioned since the Supreme Court's decision in Harmelin v.
Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)." Trevino, 174 S.W.3d
at 928 (citing McGruder v. Puckett, 954 F.2d 313, 315-16 (5th Cir. 1992) (discussing the
various opinions issued in Harmelin and their impact on the Solem decision)); see Sullivan
v. State, 975 S.W.2d 755, 757-58 (Tex. App.-Corpus Christi 1998, no pet.) (discussing the
implications of the Harmelin opinion and reviewing the proportionality of appellant's
sentence under the Solem and McGruder tests). Assuming, arguendo, the viability of a
proportionality review, as we did in Sullivan, we will apply both the Solem and McGruder
tests to the facts of this case. See Sullivan, 975 S.W.2d at 757-58. (11) In both Solem and
McGruder, we look first at the gravity of the offense and the harshness of the penalty. 
Solem, 463 U.S. at 290-91; McGruder, 954 F.2d at 316.

1. Gravity of the Offense

 Davila pleaded guilty to assault-family violence and felony DWI; both offenses are
third-degree felonies. He was placed on five years' community supervision for each case. 
The trial court later revoked his community supervision in both cases. During the
revocation hearing, Davila testified that he had three prior convictions for DWI and that a
condition of community supervision required him to avoid alcohol. He testified, however,
that while on community supervision, he "was having problems with alcohol[.]" The trial
court found that while he was on community supervision, he committed the offense of
attempted assault on a public servant. He pleaded "true" to the offense of resisting arrest,
search, or transport. When conducting an Eighth Amendment proportionality analysis, we
may consider the sentence imposed in light of the accused's prior offenses. Winchester,
246 S.W.3d at 390; Culton v. State, 95 S.W.3d 401, 403 (Tex. App.-Houston [1st Dist.]
2002, pet. ref'd). The gravity of the offense weighs in favor of a finding that the punishment
was not excessive.

2. Harshness of the Penalty

 The punishment range for a third-degree felony is imprisonment for a term of not
more than ten years or less than two years, and a fine not to exceed $10,000. Tex. Penal
Code Ann. § 12.34(a), (b) (Vernon 2003). Thus, the Legislature considers assault-family
violence and felony DWI to be serious enough to deserve a sentence of up to ten years. 
In light of the seriousness of the crimes to which Davila pleaded guilty and the fact that he
had violated the terms and conditions of his community supervision, we cannot say his
concurrent three-year sentences are excessive. We therefore find that his punishment is
not grossly disproportionate to the offenses for which he was convicted. This finding ends
our analysis under McGruder. See McGruder, 954 F.2d at 316; see also Sullivan, 975
S.W.2d at 757. Because there is no evidence in the appellate record of the sentences
imposed for other similar crimes in Texas or for the same crimes in other jurisdictions, we
cannot perform a comparative evaluation using the remaining Solem factors. See Solem,
463 U.S. at 292; see also Sullivan, 975 S.W.2d at 757-58. Therefore, we conclude that
Davila's punishment is neither grossly disproportionate nor cruel and unusual. We overrule
issue two. 


IV. Reformation of Judgments


 At the conclusion of the revocation hearing, the trial court revoked the community
supervision in each case and orally sentenced Davila to three years' imprisonment in each
case. However, the written judgment pertaining to each case reflects he was sentenced
to five years' imprisonment and that the sentences are to run concurrently. "When there
is a conflict between the oral pronouncement of sentence and the sentence in the written
judgment, the oral pronouncement controls." Taylor v. State, 131 S.W.3d 497, 500 (Tex.
Crim. App. 2004). "The solution in those cases in which the oral pronouncement and the
written judgment conflict is to reform the written judgment to conform to the sentence that
was orally pronounced." Thompson v. State, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003);
see Tex. R. App. P. 43.2(b). We, therefore, reform the judgment in trial court cause
number 07-CR-0710-E (felony DWI) to reflect a three-year prison sentence, and we reform
the judgment in trial court cause number 06-CR-3272-E (assault-family violence) to reflect
a three-year prison sentence. Both sentences are to run concurrently. 

V. Conclusion


 The trial court's judgments are affirmed as modified.

 

 

 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed the 28th 

day of January, 2010.
1. Davila pleaded guilty to the offense of assault-family violence on February 9, 2007, and to the offense
of felony DWI on March 2, 2007.
2. Appellate court cause no. 13-08-00651-CR (trial court cause no. 06-CR-3272-E). 
3. Appellate court cause no. 13-08-00694-CR (trial court cause no. 07-CR-0710-E).
4. This allegation is the same allegation asserted in the revocation motion pertaining to the felony DWI
case.
5. Because Davila raises identical issues on appeal in both cases, we consolidate both cases and issue
one opinion. 
6. The State did not file an appellate brief in either case.
7. At this point, the trial court addressed the prosecutor, "Mr. Feil, the witness made a motion that
cannot be recorded. Would you yourself or your witness describe the motion?" In response, the following
colloquy occurred between the prosecutor and Officer Tatman:


 Mr. Feil: [Y]ou had your hand in a fist; is that correct?


 Officer Tatman: Yes.


 Mr. Feil: And it was a few inches short of your shoulder?


 Officer Tatman: Yes, it was.


 Mr. Feil: And then you had that going in a forward motion?


 Officer Tatman: Yes.


 * * *


 Mr. Feil: Throwing a punch?


 Officer Tatman: Throwing a punch, yes, sir.
8. Specifically, Davila: 1) "challenges the sufficiency of the evidence to support his revocation[;]" 2)
argues the trial court failed to consider his mental status in assessing his alleged violations of community
supervision; 3) "argues that there no [sic] proper consideration of his schizophrenic depression. Since
competence may fluctuate, a trial court must be alert to the circumstances that would an [sic] accused unable
to meet the standards of competence[;] 4) argues he was not provided the proper treatment for his mental
health while on community supervision, which could have prevented the violations of community supervision;
and 5) "argues that the State failed to meet its burden by a preponderance of the evidence since [he] did not
have the strength to assault anyone after medication with a drug that causes drowsiness[.]"
9. Article 46B.004 of the Texas Code of Criminal Procedure provides, in relevant part: "If evidence
suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on
its own motion shall suggest that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc.
Ann. art. 46B.004(b) (Vernon 2006). "On suggestion that the defendant may be incompetent to stand trial,
the court shall determine by informal inquiry whether there is some evidence from any source that would
support a finding that the defendant may be incompetent to stand trial." Id. art. 46B.004(c). "If after an
informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall
order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial
in a criminal case." Id. art. 46B.005(a).
10. Vera v. State, Nos. 13-05-169, 170-CR, 2006 WL 5181930, at *3 (Tex. App.-Corpus Christi Aug.
29, 2008, pet. ref'd) (mem. op., not designated for publication).
11. See also McGiffin v. State, No. 13-05-561-CR, 2006 WL 2294553, at *1 (Tex. App.-Corpus Christi,
Aug. 10, 2006, no pet.) (mem. op., not designated for publication).