In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00043-CR


______________________________




EDDIE WAYNE GRIDER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 28143-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Eddie Wayne Grider appeals his conviction for aggravated assault for causing serious bodily
injury to Rebecca Hardin, his live-in girlfriend. A jury found Grider guilty and assessed his
punishment. The aggravated assault was enhanced by a prior felony conviction. He was sentenced
to confinement for life and a $10,000 fine.

 Grider's first point of error is that the trial court erred in denying him a pretrial psychological
examination or jury hearing to determine his competency. Grider's second point of error is that the
court erred in admitting an irrelevant and prejudicial extraneous offense into evidence at the
guilt/innocence phase of the trial. 

 Grider requested a psychological examination by a disinterested expert. The court conducted
a bench hearing and determined that although Grider had been diagnosed with paranoid
schizophrenia five years previously and was still taking medication, hearing voices, and seeing
visions, there was no evidence that he lacked sufficient ability to consult with his lawyer or that he
did not have a rational or factual understanding of the proceedings against him. On this basis, the
court did not appoint an expert to evaluate or empanel a jury to determine Grider's competence.

 Grider was charged with causing serious bodily injury to Hardin by hitting her with his hands
and fists. The State notified Grider of its intent to introduce Grider's prior offenses. Grider objected
at the guilt/innocence stage of the trial to the introduction of the prior assault offense. After a
hearing outside the presence of the jury to determine the relevance of the evidence, the court
admitted the extraneous offense, with a limiting instruction to the jury, for the purpose of rebutting
Grider's defense that Hardin had sustained the injuries when she accidentally fell, as well as to prove
motive, intent, and system. 

 A person is presumed to be competent to stand trial unless proven incompetent. Tex. Code
Crim. Proc. Ann. art. 46.02, § 1A(b) (Vernon Supp. 2002). A person is incompetent to stand trial
if that person lacks "sufficient present ability to consult with [that] person's lawyer with a reasonable
degree of rational understanding; or . . . [if that person lacks] a rational as well as factual
understanding of the proceedings against [that] person." Tex. Code Crim. Proc. Ann. art. 46.02,
§ 1A(1), (2) (Vernon Supp. 2002). If evidence of the defendant's incompetence is brought to the
court's attention from any source, the court must conduct a hearing out of the presence of the jury
to determine whether there is evidence to support a finding of incompetency to stand trial. Tex.
Code Crim. Proc. Ann. art. 46.02, § 2(b) (Vernon 1979). When the hearing is held pre-trial, any
evidence of probative value supporting a finding of incompetency requires the court to submit the
issue to a jury; the court is not to weigh evidence opposing such a finding. Tex. Code Crim. Proc.
Ann. art. 46.02, § 4(a) (Vernon Supp. 2002); Boitnott v. State, 48 S.W.3d 289 (Tex.
App.-Texarkana 2001, pet. ref'd). Evidence of mental impairment alone does not require that a
special jury be empaneled where no evidence indicates that a defendant is incapable of consulting
with counsel or understanding the proceedings against him. Lingerfelt v. State, 629 S.W.2d 216, 217
(Tex. App.-Dallas 1982, pet. ref'd). 

 In addition, whenever the defendant's competency to stand trial is raised, the court may
appoint disinterested experts to examine the defendant with regard to his competency to stand trial. 
See Tex. Code Crim. Proc. Ann. art. 46.02, § (3)(a) (Vernon Supp. 2002). Although a defendant
is not required to prove he is incompetent to be entitled to a psychiatric examination, he must raise
an issue of competence by providing the court with some evidence to support a finding of
incompetency; therefore, where there is no evidence the defendant did not understand the
proceedings or could not assist in the defense, the court does not abuse its discretion by failing to
appoint a mental health expert. See Porter v. State, 623 S.W.2d 374 (Tex. Crim. App. 1981) (The
court did not abuse its discretion in not appointing an expert when there was no evidence of present
incompetence and no request for a hearing on competency.); Bowens v. State, 507 S.W.2d 785 (Tex.
Crim. App. 1974) (The court did not err in denying motion to appoint psychiatrist when there was
no evidence that the defendant did not understand or could not assist in the defense, there was no
motion for a hearing on competency, no insanity defense, and no evidence at trial raised the issue
of competence.); Hall v. State, 808 S.W.2d 282, 285 (Tex. App.-Houston [1st Dist.] 1991, no pet.)
(Testimony indicated that the defendant understood the proceedings and had the present ability to
consult with counsel.). 

 Both failure to grant a motion for a hearing on competency and failure to appoint an expert
to conduct a psychological evaluation are reviewed for abuse of discretion. See Bigby v. State, 892
S.W.2d 864, 885 (Tex. Crim. App. 1994); Boling v. State, 617 S.W.2d 241, 242 (Tex. Crim. App.
[Panel Op.] 1981); Garcia v. State, 595 S.W.2d 538, 543 (Tex. Crim. App. [Panel Op.] 1980). 

 The court conducted a hearing on the motion for a mental examination. At that hearing,
Grider testified that he was hearing voices and seeing visions all the time, that he had been examined
five years previously and diagnosed as a paranoid schizophrenic in addition to having other
disorders, and that he was receiving Social Security disability payments. The report from his doctor
was submitted for the limited purpose of the hearing. Grider testified that he was on medication for
his condition, that when he does not take his medication he does not know what he is doing, that his
medication was "messed up" and he had an appointment to see a doctor, and that he had experienced
blackouts. He admitted he had been denied an evaluation by an Alabama court in 1998. In
discussions with the court, Grider demonstrated an understanding of the proceedings. At a prior
hearing on Grider's request that his attorney withdraw from the case, Grider had argued to the court
that his lawyer had not adequately represented him and that the State should not be allowed to
introduce extraneous evidence. The trial court denied the motion for an evaluation saying there was
no credible evidence to indicate that Grider was not presently mentally competent to stand trial, but
also commenting on the timing of the filing being so close to when jury selection was to begin. 

 Although Grider's testimony suggests he is impaired to some extent by a psychiatric disorder
requiring medication, there was no evidence that such impairment caused Grider to lack sufficient
present ability to consult with his lawyer with a reasonable degree of rational understanding or
prevented Grider from having a rational as well as factual understanding of the proceedings against
him. Although the court may have improperly considered Grider's discussions with the court as
evidence that Grider was competent, based on the lack of any evidence that would support a finding
that Grider was incompetent, the trial court did not abuse its discretion in not empaneling a jury to
determine Grider's competence. Likewise, the court did not abuse its discretion in denying the
request for a psychological evaluation. Grider's first point of error is overruled. 

 In his second point of error, Grider argues the court erred in admitting extraneous offense
evidence at the guilt/innocence stage of the trial. He contends that the evidence was too remote to
be relevant and that if it were relevant, it would only be relevant to prove character conformity,
because there was no common scheme or system which the State referred to as a "fingerprint." 
Grider also contends the court failed to perform a proper balancing of the probative and prejudicial
value of the evidence on finding that the evidence was relevant apart from character conformity,
pointing out that the court failed to articulate any of the balancing factors required under Rule 403. 
Although remoteness is a factor, because Grider did not raise the issue of remoteness as a basis for
his objections at trial, we are unable to review that issue. See Chambers v. State, 903 S.W.2d 21,
31 (Tex. Crim. App. 1995). As the other issues were raised at trial, we will review them. 

 The extraneous offense at issue is a two-year-old conviction for assault. Grider raised
objections under both Rules 404(b) and 403. The trial court conducted a hearing on the admissibility
of the prior assault outside the presence of the jury during the State's case in chief. The court
overruled Grider's renewed objection that the extraneous evidence was irrelevant, prejudicial, and
being offered only to show conformity, standing by its ruling to allow the evidence with a limiting
instruction when Grider renewed the objection before the testimony of the victim of the previous
incident, Cynthia Blevins. Blevins testified to the facts of the prior offense, and pictures of the
incident were introduced into evidence with no further objections. Both sides mentioned the incident
in closing arguments, the State making side-by-side comparisons of the two incidents. 

 To prove Grider committed aggravated assault as charged under Tex. Pen. Code Ann.
§ 22.02(a)(1) (Vernon 1994), the State had to prove he intentionally, knowingly, or recklessly caused
severe bodily injury. Grider suggested to the jury in this case, through witness examination and
argument, that Hardin's injuries were caused not by him, but by her accidental fall. Before the
hearing on the admission of the extraneous offense, Grider raised this theory during Hardin's cross-examination and asked the State's medical expert whether her injuries could be consistent with an
accident. At the hearing on admissibility, the State argued the extraneous offense was needed for
the State to show motive and intent and to disprove the defensive theory of accident.

 In the present case, Grider was convicted of aggravated assault by hitting or striking Hardin
with his hands and fists. Grider did not testify. Hardin testified that she had known Grider for about
four months and that they had lived together. On the day of the incident, Grider began yelling at
Hardin and beating her to the point of unconsciousness soon after she came home. After she awoke,
Grider told Hardin he could not take her to the hospital because he would be sent to jail. Hardin
testified Grider gave her an ice pack, but would not let her out of his sight, getting up when she got
up throughout the night, following her into the bathroom, and generally following her around the
house so she could not leave. The next morning she convinced him to let her get something out of
the car. She then drove away and called the police. She testified that her jaw had been broken,
requiring surgery, and that it was wired together for three months. Grider told the officer that Hardin
had fallen. Officer Michael Baggett testified that Hardin's bruises were consistent with someone
who had been hit. Captain Kenneth Hartley testified that often, if a defendant is a person who
abuses, that is a pattern that is likely to reoccur, escalating to a more intense level as the relationship
evolves. One of the doctors testified on cross-examination that the type of injuries Hardin sustained
to her jaw were not necessarily inflicted by a fist, but could have resulted from a fall in which a
person tripped and hit a ledge.

 In the prior assault, Grider was convicted of beating his then girlfriend of six months,
Blevins, with his hands and fists. Blevins testified in the present case. She testified that Grider
asked her to bring him some dinner and that she took her son with her when she went to his home. 
Grider was drunk and complained that the food was not good enough. She tried to leave, but Grider
followed her outside and began hitting her. He took her and her son back inside and continued to
beat her for about two hours. He took her to a hospital fifty miles away because he was afraid he
would be arrested if he took her to a local hospital. The State introduced pictures of Blevins in the
hospital after the assault. Grider told the nurses Blevins had been attacked by some girls who were
trying to steal her purse. Grider made no further objections during Blevins's direct examination. The
State rested after presenting Blevins's testimony. 

 Evidence of "other crimes, wrongs, or acts," although relevant, is not admissible to prove the
character of a person in order to show that he acted in conformity therewith, but may be admissible
if it has relevance beyond character and conformity, such as to show motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident, subject to exclusion on the
trial court's finding that its probative value is substantially outweighed by the danger of unfair
prejudice. Tex. R. Evid. 303, 404(b); Montgomery v. State, 810 S.W.2d 372, 386-87 (Tex. Crim.
App. 1991) (op. on reh'g). If extraneous offense evidence is not relevant apart from supporting an
inference of character conformity, it is inadmissible under Rule 404(b). Id. After the opponent
objects to the evidence under Rule 404, the proponent has the burden to satisfy the court the evidence
is relevant beyond character conformity. Id. Evidence is relevant where it logically serves to make
more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental
fact, or defensive evidence that undermines an elemental fact. Id. It is not enough for proponents
to argue that the evidence establishes a common scheme or plan; proponents must demonstrate that
such common scheme logically makes an elemental fact more or less probable. Rankin v. State, 974
S.W.2d 707, 720 (Tex. Crim. App. 1996) (op. on reh'g).

 If the trial court determines the evidence is relevant beyond character conformity, further
objection based on Rule 403 is required to impose the duty on the court to balance the probativeness
and admit the evidence unless its probative value is substantially outweighed by the danger of unfair
prejudice. Montgomery, 810 S.W.2d at 387. Appropriate factors include whether the ultimate issue
was contested, whether the state had other convincing evidence to establish the ultimate issue to
which the extraneous misconduct was relevant, whether the probative value of the misconduct
evidence was alone or in combination with other evidence particularly compelling, and whether the
misconduct was of such a nature that a jury instruction to disregard it for any but its proffered
purpose would not likely have been efficacious. Rankin, 974 S.W.2d at 720. 

 The trial court's Rules 404(b) and 403 determinations are reviewed for abuse of discretion. 
Montgomery, 810 S.W.2d at 391. Only if the court finds that the trial court's determination of
relevance under Rule 404(b) was beyond the zone of reasonable disagreement, or was based on the
operation of a common prejudice and not borne out in reason, will the court find that the trial court
abused its discretion and proceed to determine the harmfulness of such error under Tex. R. App. P.
81(b)(2). Montgomery, 810 S.W.2d at 391. A determination is beyond the zone of reasonable
disagreement if by no reasonable perception of common experience could it be concluded that the
proffered evidence had a tendency to make the existence of a fact of consequence more or less
probable than it would be otherwise. Id.

 In determining whether the trial court abused its discretion in making its Rule 403
determination, the appellate court must not only determine the trial judge did in fact conduct the
required balancing test and did not simply rule arbitrarily or capriciously, but must also measure the
trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. Id. at
392. Where this review leads to the conclusion that the danger of unfair prejudice substantially
outweighs the probative value of the evidence, the court should find the trial court erred in failing
to exclude the evidence. Id. 

 The record does not reveal the trial court's reasoning in finding the extraneous offense
evidence relevant apart from character conformity or in finding that the probative value was not
substantially outweighed by the prejudice. Although such articulation on the record would be helpful
in reviewing such decisions, it is not required. Id. at 397. The trial court did state the evidence was
admissible for the limited purposes of establishing motive, intent, and system, and to rebut Grider's
defensive theory, so we limit our consideration to those purposes. 

 The extraneous offense evidence did not demonstrate Grider had a motive to strike Hardin
and therefore does not make it more or less likely Grider caused the injury, but it does provide a
basis for the jury to draw the inference that Grider was motivated by his prior conviction, despite his
precaution in avoiding local hospitals, to prohibit Hardin from seeking medical treatment and to
fabricate a story regarding the cause of the injuries. Demonstrating that if Grider had caused the
injuries he would have been motivated to deny Hardin medical treatment would lend credibility to
Hardin's account of the hours following the incident and would undermine Grider's explanation for
her delay in seeking treatment.

 The extraneous offense evidence could have been relevant to Grider's intent to cause bodily
injury by implying that because similar behavior had produced bodily injury in the previous case,
he would have been at least reckless in exhibiting the same behavior toward his girlfriend in this
case. 

 The defensive theory to which the State referred at the hearing on admissibility was Grider's
defense that Hardin had injured herself by falling. This defense put the element of causation at issue. 
To rebut this defense, the extraneous offense evidence must be relevant to make the element of
causation more or less probable. Because domestic violence often occurs in secrecy, pitting one
person's word against another's, the State's case may depend on the credibility of the complainant. 
When that credibility is called into question by the defendant, evidence demonstrating the
defendant's attitude, relevant to culpable intent, and willingness to act on it, relevant to prohibited
conduct, would lend credibility to the complainant's account that society might otherwise be reluctant
to find, especially in the face of defensive theories of revenge and greed, as Grider also presented
in this case. See id. at 394. Also, lending credibility to Hardin's account of the incident through the
inferences discussed above regarding motive would make causation more or less probable. 

 There are several similarities between the two offenses that may comprise a common plan,
scheme, or system. Grider had a similar relationship with both females. The location of the beating
in both cases was his home. In both cases, he used his hands and fists. Grider demonstrated the
same concern for obtaining treatment and the same awareness of guilt to his girlfriends after both
beatings. Grider fabricated stories for the authorities to explain away the injuries in both cases. The
prior offense, because of the similarities, is relevant beyond the prohibited purpose of suggesting that
Grider is generally a bad character and therefore is more likely to have committed another crime. 
It is relevant beyond implying because Grider previously committed assault, he is more likely to have
become violent and committed another assault. The similarities may suggest that when Grider finds
himself in a similar situation, he will act in a similar fashion, but more importantly, the similarities
would also lend credibility to Hardin's testimony and thus make causation more probable. 

 It is not outside the zone of reasonable disagreement to find the evidence was admissible for
the legitimate purposes stated by the court. The court provided an instruction to the jury limiting
their consideration of the evidence to legitimate grounds. Therefore, the trial court did not abuse its
discretion in overruling Grider's Rule 404(b) objection regarding the extraneous offense evidence. 
 The trial court, on overruling Grider's Rule 404(b) objection, was obligated by the Rule 403
objection to balance the probative and prejudicial value of the evidence to determine if it was
admissible. Although the court is not required to articulate the bases for its ruling, the court must
go through the balancing process and consider the appropriate factors. The court in this case did not
articulate the basis for its ruling, but recited that the probative value of the evidence was not
substantially outweighed by the danger of unfair prejudice. Grider did not object to the trial court's
failure to articulate the basis for its ruling. Because there was evidence of some of the relevant
factors available to the court, although the court did not inquire as to any of them during the hearing,
we cannot say that the court failed to conduct the balancing test. However, we must measure the trial
court's ruling against the relevant criteria by which a Rule 403 decision is to be made. See id. at 392. 


 In this case, the ultimate issue of causation was contested. Although the State had other
evidence to prove causation, it was not conclusive and was easily called into question. Hardin's
testimony was the only eyewitness account of the incident, so her credibility was extremely
important to the State's case. The testimony the injuries were consistent with Hardin's account of
being hit with hands or fists was less compelling beside testimony that such injuries could also be
consistent with Grider's account of Hardin being injured in a fall and hitting her jaw. In combination
with the other evidence presented, the probative value of the extraneous offense evidence was
particularly compelling because it supported the credibility of Hardin's accounts not only of the
beating, but of the events which followed. The prior misconduct, assault, was not of such a nature
that a jury would not be able to disregard it for any but its proffered purpose, even when instructed
by the court to do so. Because a review of the appropriate factors does not demonstrate the probative
value of the evidence would have been substantially outweighed by the potential for unfair prejudice,
we cannot say the court abused its discretion in admitting the extraneous offense evidence. Because
we find the court did not err, we do not need to address the issue of harm. Grider's second point of
error is overruled. 

 The judgment of the trial court is affirmed. 




 Ben Z. Grant

 Justice


Date Submitted: October 26, 2001

Date Decided: January 25, 2002


Publish