

NUMBERS 13-08-00651-CR and 13-08-00694-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

ARMANDO DAVILA,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

On appeal from the 148th District Court
of Nueces County, Texas.

MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion by Justice Vela**

In separate plea hearings,[1] appellant, Armando Davila, pleaded guilty to the offense

of assault-family violence, a third-degree felony,[2] *see* TEX. PENAL CODE ANN. §

---

[1]Davila pleaded guilty to the offense of assault-family violence on February 9, 2007, and to the offense of felony DWI on March 2, 2007.

[2]Appellate court cause no. 13-08–00651-CR (trial court cause no. 06-CR-3272-E).

22.01(b)(2)(A) (Vernon Supp. 2009), and felony driving while intoxicated, a third-degree felony (felony DWI).[3] *See id.* § 49.09(b)(2). In each case, the trial court sentenced him to five years' imprisonment, suspended imposition of the sentences, and placed him on five years' community supervision. The trial court imposed a $500 fine for the offense of assault-family violence and a $1,500 fine for the offense of felony DWI.

The State subsequently filed separate motions to revoke community supervision for each case. The revocation motion pertaining to the felony DWI case alleged that Davila violated the terms and conditions of community supervision by: 1) committing the offenses of attempted assault on a public servant and resisting arrest, search or transport; 2) failing to report to his community-supervision officer for the month of July 2008; 3) failing to pay the required court costs and fine; and 4) failing to report for the mental-health specialized caseload for the month of July 2008. Davila pleaded "not true" to the allegations of attempted assault on a public servant and that he failed to report for the mental-health specialized caseload during July 2008. He pleaded "true" to the remaining allegations. The revocation motion pertaining to the assault-family violence case alleged that Davila violated the terms and conditions of community supervision by committing the offense of attempted assault on a public servant.[4] Davila pleaded "not true" to the allegation.

After hearing testimony, the trial court revoked Davila's community supervision in both cases, and in each case, assessed concurrent three-year prison terms. In this consolidated appeal,[5] Davila argues that 1) the trial court abused its discretion by revoking

---

[3]Appellate court cause no. 13-08-00694-CR (trial court cause no. 07-CR-0710-E).

[4]This allegation is the same allegation asserted in the revocation motion pertaining to the felony DWI case.

[5]Because Davila raises identical issues on appeal in both cases, we consolidate both cases and issue one opinion.

his community supervision, and 2) the punishment imposed violated his Eighth Amendment right against cruel and unusual punishment.[6] We affirm the judgments as modified.

## I. REVOCATION HEARING

On October 8, 2008, the trial court heard the revocation motions for both cases in a single hearing. After Davila pleaded to the allegations in both revocation motions, the trial court heard testimony from both sides.

*A. State's Evidence*

John Beattie, who worked as a community-supervision officer and a specialized mental-health officer for the Nueces County Adult Probation Department, supervised Davila under the specialized mental-health caseload. He testified that Davila did not report to him in the month of July 2008. He stated the conditions of Davila's community supervision required Davila "to report to me at least two times that month [July 2008] in person and one time by telephone or through a—his mental health care physician or caseworker."

Polanco Tatman testified he was a public servant and worked as a corrections officer for the Nueces County Sheriff's Office. His duties at the county jail included escorting the nurse, who administered medications to the inmates. On September 6, 2008, he was on duty, escorting a nurse, who was giving medication to Davila, who was in a jail cell. Officer Tatman opened the door to Davila's cell, allowing the nurse to give Davila some medication. After the nurse left, Officer Tatman was closing the door to Davila's cell when Davila stopped the door from closing and swung his fist at Officer Tatman. Davila did not make contact with Officer Tatman. When the prosecutor asked Officer Tatman, "And if you hadn't gone out of the way, would it have contacted you?", he said, "Yes,

---

[6]The State did not file an appellate brief in either case.

3

probably will."[7]

Christopher Flores, a corrections officer for the Nueces County Sheriff's Office, testified that on September 6, 2008, he accompanied Officer Tatman when Davila was receiving the medication. Officer Flores stated that he saw Davila "swing at" Officer Tatman.

*B. Defense Evidence*

Davila denied that he attempted to hit Officer Tatman and testified that Officer Tatman assaulted him. When defense counsel asked Davila about the allegation that he failed to report for the mental-health specialized caseload for the month of July, he said that he "was having problems with alcohol" and that he was hospitalized twice that month. He testified that he took medications for his anxiety, depression, and schizophrenia. He stated that on September 6, 2008, he was given the medication, Trazodone, to help him sleep. He stated that after taking that medication, he would go to sleep in about an hour.

---

[7]At this point, the trial court addressed the prosecutor, "Mr. Feil, the witness made a motion that cannot be recorded. Would you yourself or your witness describe the motion?" In response, the following colloquy occurred between the prosecutor and Officer Tatman:

Mr. Feil:　　　　[Y]ou had your hand in a fist; is that correct?

Officer Tatman: Yes.

Mr. Feil:　　　　And it was a few inches short of your shoulder?

Officer Tatman: Yes, it was.

Mr. Feil:　　　　And then you had that going in a forward motion?

Officer Tatman: Yes.

* * *

Mr. Feil:　　　　Throwing a punch?

Officer Tatman: Throwing a punch, yes, sir.

4

## II. REVOCATION OF COMMUNITY SUPERVISION

In issue one, Davila contends the trial court abused its discretion by revoking his community supervision and imposing the three-year sentences without considering his mental-health issues.

### A. Standards of Review

We review the decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The State bears the burden of showing that the defendant committed a violation of the community-supervision conditions. *Antwine v. State*, 268 S.W.3d 634, 636 (Tex. App.–Eastland 2008, pet. ref'd). An order revoking community supervision "'must be supported by a preponderance of the evidence; in other words, that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation.'" *Rickels,* 202 S.W.3d at 763-64 (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). In a revocation case, we review the evidence in the light most favorable to the trial court's decision. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

In our review of a trial court's determination of the appropriate punishment in any given case, "a great deal of discretion is allowed the sentencing judge." *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Baldridge v. State*, 77 S.W.3d 890, 893-94 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd). It is "the general rule that as long as a sentence is within the proper range of punishment it will not be disturbed on appeal." *Jackson*, 680 S.W.2d at 814. A trial court will be found to have abused its discretion only if there is no evidence or factual basis for the punishment imposed. *Id*.; *Benjamin v. State*, 874 S.W.2d 132, 135 (Tex. App.–Houston [14th Dist.] 1994, no pet.).

**B. Davila's Arguments**

Davila challenges the trial court's decision to revoke his community supervision by five arguments,[8] which we group into three categories.

*1. Sufficiency of The Evidence To Support The Judgments Revoking Community Supervision*

Both revocation motions alleged that Davila committed the offense of attempted assault on a public servant. A person commits assault on a public servant if he or she: "(1) intentionally, knowingly, or recklessly causes bodily injury to another, . . . [and] (b) . . . the offense is committed against: (1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty," TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (Vernon Supp. 2009), "'Public servant' means a person . . . employed, . . . as one of the following, even if he has not yet qualified for office or assumed his duties: (A) an officer, employee, or agent of government; . . . ." *Id*. § 1.07(41)(A). The penal code sets out the elements for a criminal attempt: "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id*. § 15.01(a) (Vernon 2003). "Intent may be inferred from acts, words and conduct of [the] accused." *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Here, the trial court could have determined the following from the evidence: 1) while Officer Tatman was closing the door to Davila's jail cell, Davila stopped him from closing

---

[8]Specifically, Davila: 1) "challenges the sufficiency of the evidence to support his revocation[;]" 2) argues the trial court failed to consider his mental status in assessing his alleged violations of community supervision; 3) "argues that there no [sic] proper consideration of his schizophrenic depression. Since competence may fluctuate, a trial court must be alert to the circumstances that would an [sic] accused unable to meet the standards of competence[;] 4) argues he was not provided the proper treatment for his mental health while on community supervision, which could have prevented the violations of community supervision; and 5) "argues that the State failed to meet its burden by a preponderance of the evidence since [he] did not have the strength to assault anyone after medication with a drug that causes drowsiness[.]"

the door and swung at him; 2) had Officer Tatman not avoided the swing, he would have been hit by Davila; 3) at the time of the incident, Officer Tatman was on duty as a public servant, who was engaged in the lawful discharge of an official duty as an employee for the Nueces County Sheriff's Office; and 4) at the time of the incident, Davila knew Officer Tatman was a corrections officer.

To the contrary, Davila's testimony was that he did not attempt to hit Officer Tatman. He also testified that prior to the occurrence of the alleged incident, the nurse had given him the medication, Trazodone, which caused him to become sleepy.

At a revocation hearing, the trial court is the sole judge of the credibility of the witnesses and the weight given to their testimony. *Hart v. State*, 264 S.W.3d 364, 366 (Tex. App.–Eastland 2008, pet. ref'd). Thus, the trial court could have decided to believe Officers Tatman and Flores and disbelieve Davila. Viewing the evidence in the light most favorable to the trial court's decision, we hold that the State proved by a preponderance of the evidence that Davila, with specific intent to commit the offense of assault on a public servant, did an act, i.e., swing at Officer Tatman, that amounted to more than mere preparation, that tended but failed to effect the commission of the intended assault.

The trial court's finding that Davila committed the offense of attempted assault on a public servant supported the decision to revoke Davila's community supervision in both cases. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (stating that "one sufficient ground for revocation will support the court's order to revoke probation."). With respect to the felony DWI case, Davila pleaded "true" to the allegations that he committed the offense of resisting arrest, search, or transport, that he failed to report to his community-supervision officer for the month of July 2008, and that he had not paid the required fine and court costs. A plea of "true" alone is sufficient to support revocation.

7

*Jiminez v. State*, 552 S.W.2d 469, 472 (Tex. Crim. App. 1977). By entering a plea of "true" to the allegations in the felony DWI case, Davila cannot challenge the sufficiency of the evidence to support the revocation in that case. *Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. 1979).

## 2. Competency to Stand Trial

Davila argues the trial court did not give proper consideration to his schizophrenic depression and that a trial court must be alert to the circumstances showing that the accused does not meet the standards of competency to stand trial.

### a. Standard of Review

We apply an abuse-of-discretion standard when reviewing a trial court's failure to conduct an inquiry into a defendant's competency to stand trial. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009). In determining abuse of discretion, we do not substitute our judgment for that of the trial court, but rather determine whether the trial court's decision was arbitrary or unreasonable. *Id*.

### b. Applicable Law

The competency statute[9] "allows the trial judge to informally determine whether the behavior of the defendant during a proceeding indicates a lack of rational understanding." *Id*. The *Montoya* court stated that the bona fide doubt standard is:

---

[9]Article 46B.004 of the Texas Code of Criminal Procedure provides, in relevant part: "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(b) (Vernon 2006). "On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id*. art. 46B.004(c). "If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial in a criminal case." *Id*. art. 46B.005(a).

the proper standard for determining whether a trial court should conduct an inquiry. If a trial judge has a *bona fide* doubt about the competency of the defendant, he or she shall conduct an informal inquiry to determine if there is evidence that would support a finding of incompetence. A *bona fide* doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation.

*Id*. at 425. Article 46B.003 provides that a person is incompetent to stand trial if the person does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(1) & (2) (Vernon 2006). This statute "specifies the defendant's *present* ability . . . . [P]ast mental-health issues raise the issue of incompetency only if there is evidence of recent severe mental illness, at least moderate retardation, or bizarre acts by the defendant." *Montoya,* 291 S.W.3d at 425 (emphasis in original). When evaluating competency to stand trial, the considerations "include the defendant's level of understanding of the proceeding and ability to consult with counsel in preparation for the proceeding. Thus, those who observed the behavior of the defendant at the hearing were in a better position to determine whether [Davila] was presently competent." *Id*. at 425-26.

*c. Analysis*

During the revocation hearing, but prior to accepting Davila's pleas to the allegations in the revocation motions, the trial court elicited responses from Davila showing that: 1) he was twenty-eight years old and had dropped out of high school in the tenth grade; 2) he had been incarcerated in the county jail for the past two months; 3) he was being treated for schizoaffective disorder and; 4) during his incarceration, the jail's medical staff administered medications to him, specifically Lexapro, Geodone, Zyprexa, and Trazodone. When the trial court asked Davila, "[D]o you feel like you have adjusted to the medication

9

that they [the jail's medical staff] have been administering to you?" and "Are you able to focus on this hearing this morning?", he replied, "Yes, ma'am" to both questions. Davila answered the trial court's questions without difficulty. He understood the State had filed separate motions to revoke his community supervision in each case, and he understood the revocation allegations. During his testimony, Davila adequately understood and responded to questions from both defense counsel and the State. Even though he was being treated for schizoaffective disorder and testified that he took medications for his anxiety, depression, and schizophrenia, mental impairment alone does not establish an accused's inability to consult with defense counsel or understand the proceedings against him. *See Moore v. State,* 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (stating that "[t]o raise the issue of competency by means of the defendant's past mental health history, there generally must be evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation."); *Grider v. State*, 69 S.W.3d 681, 684 (Tex. App.–Texarkana 2002, no pet.) (evidence did not show that paranoid schizophrenic's taking medication, hearing voices, and seeing visions constituted incompetency). We note that Davila made no outbursts during the revocation proceeding. *See Moore*, 999 S.W.2d at 395 (stating that "inappropriate violations of court decorum" evidence an "inability to communicate with counsel, or factually appreciate the proceedings against him.").

Furthermore, the record reflects no indication of recent severe mental illness, moderate retardation, or truly bizarre acts, and there was no suggestion by Davila's defense counsel, the prosecutor, or the trial court, all of whom saw Davila's behavior at the revocation hearing, that he appeared unable to understand the proceedings. The record showed that Davila had the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational as well as a factual

10

understanding of the proceedings against him.  *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(1) & (2).  Giving proper deference to the trial judge's determination based on her ability to see Davila's behavior, we hold that because the evidence did not raise a bona-fide doubt about Davila's competence, the trial court did not abuse its discretion by failing to determine by informal inquiry whether there was some evidence from any source that would support a finding that Davila was incompetent to stand trial.  *See Grider*, 69 S.W.3d at 685.

*3. Mental-Health Treatment While on Community Supervision*

Davila contends he was not provided with the proper treatment for his mental health while on community supervision, and that such treatment could have prevented the violations.  Condition 10-1 of the terms and conditions of Davila's community supervision pertaining to the offense of assault-family violence required him to participate in a specialized "Mental Health Caseload."  This condition further required him to complete a mental-health evaluation and counseling as directed by his specialized mental-health officer.  We note that during the revocation hearing, but prior to accepting Davila's pleas to the allegations in the revocation motions, the trial court announced that:  1) a motion to revoke community supervision with respect to the assault-family violence case was filed on August 8, 2008; 2) Davila appeared in court with reference to that motion on August 22, 2008, at which time the trial court found him "in violation of conditions of community supervision[;]" and 3) the trial court continued him on community supervision but "ordered [him] . . . to be placed on the MHMR Art Program" and "ordered [him] to enroll in the . . . Coastal Bend Out Patient Program."  Accordingly, Davila was offered mental-health services during the term of his community supervision.  He does not state which other mental-health services he needed, nor does he state how these mental-health services

11

would have kept him from violating the terms and conditions of his community supervision. We hold that the trial court did not abuse its discretion either by revoking Davila's community supervision in both cases or by sentencing him to three years' imprisonment for each case.

### III. Cruel & Unusual Punishment

In issue two, Davila contends the trial court's sentence violated his Eighth Amendment right against cruel and unusual punishment. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amends. VIII, XIV; *see* TEX. CONST. art. I, § 13. The Eighth Amendment does not require strict proportionality between the crime and the sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003). The precise contours of the "grossly disproportionate" standard are unclear, but it applies only in "exceedingly rare" and "extreme" cases. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Texas courts have traditionally held that, as long as the punishment assessed falls within the range prescribed by the legislature in a valid statute, the punishment is not excessive. *See Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.–Corpus Christi 2005, pet. ref'd); *see also Escochea v. State*, 139 S.W.3d 67, 80 (Tex. App.–Corpus Christi 2004, no pet.).[10]

Davila's sentences fell within the applicable range of punishment. However, that does not end the inquiry. Texas courts recognize a prohibition against grossly disproportionate sentences survives under the federal constitution apart from any

---

[10]*Vera v. State*, Nos. 13-05-169, 170-CR, 2006 WL 5181930, at *3 (Tex. App.–Corpus Christi Aug. 29, 2008, pet. ref'd) (mem. op., not designated for publication).

12

consideration whether the punishment assessed is within the statute's punishment range. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.–Amarillo 2008, pet. ref'd); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.–Texarkana 2006, no pet.).

This Court has recognized that "the viability and mode of application of proportionate analysis . . . has been questioned since the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)." *Trevino*, 174 S.W.3d at 928 (citing *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir. 1992) (discussing the various opinions issued in *Harmelin* and their impact on the *Solem* decision)); *see Sullivan v. State*, 975 S.W.2d 755, 757-58 (Tex. App.–Corpus Christi 1998, no pet.) (discussing the implications of the *Harmelin* opinion and reviewing the proportionality of appellant's sentence under the *Solem* and *McGruder* tests). Assuming, *arguendo*, the viability of a proportionality review, as we did in *Sullivan,* we will apply both the *Solem* and *McGruder* tests to the facts of this case. *See Sullivan*, 975 S.W.2d at 757-58.[11] In both *Solem* and *McGruder,* we look first at the gravity of the offense and the harshness of the penalty. *Solem*, 463 U.S. at 290-91; *McGruder*, 954 F.2d at 316.

1. *Gravity of the Offense*

Davila pleaded guilty to assault-family violence and felony DWI; both offenses are third-degree felonies. He was placed on five years' community supervision for each case. The trial court later revoked his community supervision in both cases. During the revocation hearing, Davila testified that he had three prior convictions for DWI and that a condition of community supervision required him to avoid alcohol. He testified, however, that while on community supervision, he "was having problems with alcohol[.]" The trial

---

[11]*See also McGiffin v. State*, No. 13-05-561-CR, 2006 WL 2294553, at *1 (Tex. App.–Corpus Christi, Aug. 10, 2006, no pet.) (mem. op., not designated for publication).

13

court found that while he was on community supervision, he committed the offense of attempted assault on a public servant. He pleaded "true" to the offense of resisting arrest, search, or transport. When conducting an Eighth Amendment proportionality analysis, we may consider the sentence imposed in light of the accused's prior offenses. *Winchester*, 246 S.W.3d at 390; *Culton v. State*, 95 S.W.3d 401, 403 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd). The gravity of the offense weighs in favor of a finding that the punishment was not excessive.

*2. Harshness of the Penalty*

The punishment range for a third-degree felony is imprisonment for a term of not more than ten years or less than two years, and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.34(a), (b) (Vernon 2003). Thus, the Legislature considers assault-family violence and felony DWI to be serious enough to deserve a sentence of up to ten years. In light of the seriousness of the crimes to which Davila pleaded guilty and the fact that he had violated the terms and conditions of his community supervision, we cannot say his concurrent three-year sentences are excessive. We therefore find that his punishment is not grossly disproportionate to the offenses for which he was convicted. This finding ends our analysis under *McGruder*. *See McGruder*, 954 F.2d at 316; *see also Sullivan*, 975 S.W.2d at 757. Because there is no evidence in the appellate record of the sentences imposed for other similar crimes in Texas or for the same crimes in other jurisdictions, we cannot perform a comparative evaluation using the remaining *Solem* factors. *See Solem*, 463 U.S. at 292; *see also Sullivan*, 975 S.W.2d at 757-58. Therefore, we conclude that Davila's punishment is neither grossly disproportionate nor cruel and unusual. We overrule issue two.

14

## IV. REFORMATION OF JUDGMENTS

At the conclusion of the revocation hearing, the trial court revoked the community supervision in each case and orally sentenced Davila to three years' imprisonment in each case. However, the written judgment pertaining to each case reflects he was sentenced to five years' imprisonment and that the sentences are to run concurrently. "When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls." *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). "The solution in those cases in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced." *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 43.2(b). We, therefore, reform the judgment in trial court cause number 07-CR-0710-E (felony DWI) to reflect a three-year prison sentence, and we reform the judgment in trial court cause number 06-CR-3272-E (assault-family violence) to reflect a three-year prison sentence. Both sentences are to run concurrently.

## V. CONCLUSION

The trial court's judgments are affirmed as modified.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 28th
day of January, 2010.

15