**Opinion filed February 28, 2020**



## In The

# Eleventh Court of Appeals

_____

## No. 11-18-00037-CR

_____

## MICKEY RAY PERKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24903**

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Mickey Ray Perkins for the first-degree felony offense of aggravated assault with a deadly weapon against a family member. *See* TEX. PENAL CODE ANN. § 22.02 (West 2019). The jury found Appellant guilty of the offense and assessed his punishment at confinement for twenty-seven years and a fine of $5,000. The trial court sentenced him accordingly. We affirm.

On appeal, Appellant raises three issues. First, Appellant claims that the trial court committed error when it allowed the State to present extensive details of an extraneous offense in the guilt/innocence phase of trial although Appellant had offered to stipulate to the offense. In his second issue on appeal, Appellant claims that the evidence was legally insufficient to establish serious bodily injury. Finally, in his third issue on appeal, Appellant claims that he received ineffective assistance of counsel.

On the date of the offense, Appellant and Lana Hyles met at the Brownwood Regional Medical Center. Appellant and Hyles had been in a relationship prior to this date. The reason that they met at the medical center is disputed. Hyles claimed that Appellant wanted to borrow her vehicle and that he was going to take her to her apartment after he met her at the medical center. Appellant, on the other hand, claimed that Hyles had called him and wanted Appellant to drive her around to run some errands.

In any event, Appellant was the one who drove Hyles's vehicle away from the medical center. When Appellant did not turn in the direction of Hyles's apartment, Appellant and Hyles began to argue. Hyles claimed that she asked Appellant where he was going and that Appellant then "pushed [her] head into the console of the [vehicle]" and caused her to start bleeding. She testified that Appellant grabbed her by the neck and held her down. In contrast, Appellant testified that Hyles became upset after Appellant told her that he had told Hyles's ex-husband that he believed that Hyles was doing drugs. Appellant claimed that at this point, while the vehicle was still in motion, Hyles put the vehicle into either reverse or park as Appellant simultaneously applied the brakes and that Hyles hit her face on the console of the vehicle. Appellant testified that Hyles had "a gash in her nose and she was bleeding."

2

Subsequently, Hyles got out of the vehicle. After Hyles was out of her vehicle, Carrol Weathermon, a stranger to both Hyles and Appellant, pulled up behind Hyles's vehicle to assist after she saw "blood in the air." Weathermon testified that she saw Hyles "crumpled on the ground" and Appellant standing over Hyles. She testified that Appellant had Hyles by the hair and was trying to pull Hyles back to her vehicle. However, Hyles testified that she did not recall that Appellant pulled her hair to drag her back to her vehicle.

After Hyles noticed Weathermon, Hyles got into Weathermon's vehicle and Weathermon took Hyles to the emergency room at the Brownwood Regional Medical Center. Appellant drove ahead of them in Hyles's vehicle in the direction of the hospital. On the way to the hospital, Weathermon called 9-1-1 and reported the license plate number of Hyles's vehicle. She also reported that she was taking Hyles to the emergency room; officers were sent to the hospital as a result of the 9-1-1 call. Hyles did not stay at the hospital very long and left against medical advice. In fact, she testified: "I bet I wasn't even there an hour." She did not allow the hospital personnel to put stitches in her nose.

At trial, at a hearing outside the presence of the jury, the State told the trial court that it wanted to introduce testimony about an unadjudicated extraneous offense of assault. The State sought to admit the testimony of Appellant's former girlfriend, Sarah Rogers. The State announced that Rogers would testify to an alleged assault committed by Appellant against her. The State argued that, under Article 38.371 of the Texas Code of Criminal Procedure, this type of evidence would be relevant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371 (West Supp. 2019). The State further argued that the testimony would be admissible under Rule 404(b) of the Texas Rules of Evidence to rebut the defensive theory that Hyles caused her injury herself when she shifted the vehicle into either reverse or park while the

3

vehicle was still in motion. The State also argued that Rogers's testimony would show motive and absence of mistake or lack of accident.

Appellant's trial counsel argued that Rogers's testimony about the extraneous offense should not be allowed because Appellant offered to stipulate to the assault. Appellant's counsel also argued that the testimony would be more prejudicial than probative and would confuse the jurors.

The trial court ultimately allowed Rogers to testify to the extraneous assault to show intent and motive, to rebut a defensive theory, and to show absence of mistake. The trial court ruled that the State was not required to accept Appellant's offer to stipulate, and it also found that the probative value of the testimony outweighed its prejudicial nature. The trial court also provided a limiting instruction to the jury in which it instructed the jury that Rogers's testimony could only be considered if the jury believed beyond a reasonable doubt that Appellant committed the extraneous offense and, if so, that it could only consider her testimony to determine intent, motive, absence of mistake or lack of accident, or to rebut a defensive theory "in connection with the offense alleged against [Appellant] in the indictment."

First, we will discuss Appellant's claim that the trial court should not have allowed Rogers to testify to the extraneous offense. At trial, Rogers testified that she first met Appellant on social media when both she and Appellant lived in Arkansas and that, in 2015, she eventually moved to Texas with Appellant. Appellant, Rogers, and Rogers's son lived together.

Rogers testified that, on one occasion, she and Appellant had been out drinking and later went home and went to bed. During the night, for reasons that she could not remember, she awakened Appellant. She testified that Appellant woke up "[v]ery mean" and that an argument ensued. Rogers said that Appellant struck her with a closed hand because "[she] wouldn't stop talking" and that Appellant

4

"started punching [her] wherever he could." She also testified that, during the assault, she lost consciousness but that, when she woke up, she was on the floor and Appellant was still hitting her.

Rogers told the jury that the assault ended when Appellant dragged her, by her hair, from the bedroom to the living room. After she put on her clothes, she got her son, went outside, locked herself and her son in the car, called 9-1-1, and waited for law enforcement to arrive. Rogers also testified about her injuries. She stated that, as a result of the assault, she sustained bruises around her neck, a black eye, scratches on her face, and two broken ribs. She also testified that the results of a CT scan revealed that she had suffered a brain bleed.

Appellant argues that the trial court committed error when it allowed Rogers to testify to the details of the extraneous assault in the guilt/innocence phase of the trial even though Appellant offered to stipulate to the offense. Absent circumstances not relevant here,[1] the State was not required to accept Appellant's offer to stipulate. *Rodriguez v. State*, 373 S.W.2d 258, 259 (Tex. Crim. App. 1963) ("The State may adduce its testimony as it sees fit, and it may or may not agree to a stipulation."); *Castillo v. State*, No. 08-02-00199-CR, 2003 WL 21674197, at *11 (Tex. App.— El Paso July 17, 2003, no pet.) (not designated for publication); *Sinclair v. State*, No. 14-96-01564-CR, 1999 WL 649072, at *3 (Tex. App.—Houston [14th Dist.] Aug. 26, 1999, pet. ref'd) (not designated for publication).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Further, even relevant evidence may be inadmissible if its probative value is "substantially outweighed by

---

[1]*See, e.g.*, *Robles v. State*, 85 S.W.3d 211 (Tex. Crim. App. 2002) (involving offer to stipulate to jurisdictional DWI enhancement).

a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401.

Evidence of a crime, wrong, or other act may be admissible for a purpose other than character conformity, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Evidence of extraneous acts may also be admitted to rebut a defensive issue that negates an element of the charged offense. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). Indeed, "[t]he standard of review for a trial court's ruling under the Rules of Evidence is abuse of discretion." *Id.* at 467 (quoting *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)). This means we will only overrule a trial court's decision on the admissibility of evidence if that decision is outside the zone of reasonable disagreement. *Id.*

To be admissible under both Rule 404(b) and 403 of the Texas Rules of Evidence, the extraneous evidence must satisfy a two-prong test: the extraneous offense must be relevant to a fact of consequence apart from its tendency to prove conduct in conformity with character, and the probative value of the evidence must not be substantially outweighed by unfair prejudice. *Id.* When the trial court balances probative value against unfair prejudice, the trial court should consider:

> (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous-offense evidence to

impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence; and (4) the strength of the proponent's need for the evidence to prove a fact of consequence.

*Hung Phuoc Le v. State*, 479 S.W.3d 462, 471 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

As we previously noted, in a hearing outside the presence of the jury, Appellant's counsel objected to the admission of Rogers's testimony. Counsel argued that it was more prejudicial than probative and would confuse the jurors. The State argued that the testimony was relevant to rebut Appellant's defensive issue and to show motive, as well as absence of mistake and lack of accident. When the trial court ruled, it stated: "I do find that, on balance, that the probative value does outweigh the prejudicial nature. . . . [I]t can be admitted to show the intent and the motive of the Defendant in this case, as well as . . . to rebut a defensive theory, and to show absence of mistake . . . ."

It is clear from the trial court's statement that the trial court found Rogers's testimony to be admissible under Rule 404(b) and also conducted the necessary two-prong test under Rule 403. *See Patterson v. State*, 496 S.W.3d 919, 929 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (when the trial court weighs the relevance of the evidence against its prejudicial impact, it need not formally announce on the record that it has conducted this balancing test). The trial court's ruling under Rule 404(b) was not outside the zone of reasonable disagreement. *See Grider v. State*, 69 S.W.3d 681, 689 (Tex. App.—Texarkana 2002, no pet.) (upholding the admission of testimony from defendant's prior girlfriend about a previous assault). Further, because "[w]e generally presume a jury followed a trial court's instruction regarding consideration of evidence," any potential harm was mitigated by the trial court's limiting instruction to the jury. *Hung Phuoc Le*, 479 S.W.3d at 472. Thus, the trial court did not abuse its discretion when it allowed

Rogers to testify to the extraneous offense. We overrule Appellant's first issue on appeal.

Next, we will discuss Appellant's challenge to the sufficiency of the evidence. In his second issue on appeal, Appellant claims that the evidence was legally insufficient to establish the serious bodily injury element of the offense.

For a challenge to the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicts in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 433 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 722, 778 (Tex. Crim. App. 2007).

A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another." PENAL § 22.01(a)(1). A person commits the first-degree felony of aggravated assault against a family member if the actor uses a deadly weapon in the commission of the assault and causes serious bodily injury to another person whose relationship with the actor is described by the relevant sections of the Texas Family Code, which includes a dating relationship as defined by Section 71.0021(b) of the Family Code. PENAL § 22.02(b)(1); *see* TEX. FAM. CODE ANN. § 71.0021(b) (West 2019).

"Serious bodily injury" is injury "that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of

the function of any bodily member or organ." PENAL § 1.07(a)(46) (West Supp. 2019). "There are no wounds that constitute 'serious bodily injury' *per se*." *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd). Instead, what constitutes serious bodily injury must be determined on a case-by-case basis. *Id.*

Further, the relevant issue is the extent of the injury as inflicted. "[A]n appellate court should not consider the amelioration or exacerbation of an injury by actions not attributable to the offender, such as medical treatment." *Blea v. State*, 483 S.W.3d 29, 35 (Tex. Crim. App. 2016). "However, in evaluating the evidence supporting serious bodily injury, courts do consider . . . whether the injury would be permanently disfiguring without medical treatment." *Sizemore*, 387 S.W.3d at 829. In addition, serious bodily injury can be established without a physician's testimony "when the injury and its effects are obvious. The person who sustained the at-issue injury is qualified to express an opinion about the seriousness of that injury." *Id.* at 828 (citation omitted).

At trial, Weathermon testified that "[Hyles's] nose was bleeding profusely. She was . . . just dripping." While no physician testified, Hyles testified that she still had a scar from her injury over a year after the incident, that the cut still caused her tenderness and pain, that the swelling because of the cut disrupted the use of her nose for "some time," and that she assumed she would have a scar forever. Hyles also testified that her friend, April Wooldridge, a licensed vocational nurse, treated her nose every day for a week after Hyles left the hospital. Additionally, one of the responding officers testified that Hyles had a "very large gash on her nose." Even Appellant testified that Hyles had "a gash in her nose and she was bleeding."

State's Exhibit No. 1 was a recording of the 9-1-1 call, on which Hyles could be heard in the background. She stated on the call: "I need the emergency room," "I'm bleeding everywhere," and "I'm in a lot of pain." State's Exhibit Nos. 2

through 5 were photographs taken by police officers. The photographs depict Hyles's injuries when she was at the hospital. The photographs reflect the fact that there was blood all over Hyles's face and arms. Also, State's Exhibit Nos. 12 and 13 were photographs of the interior of Hyles's vehicle where the assault occurred. In these photographs, blood can be seen on the console and on the passenger seat.

From the evidence described above, viewed in the light most favorable to the verdict, a rational juror could have found beyond a reasonable doubt that Hyles's injury constituted serious bodily injury. Thus, we find that the evidence is sufficient to establish the serious bodily injury element of the offense. We overrule Appellant's second issue on appeal.

Finally, we will discuss Appellant's third issue, in which Appellant claims that he received ineffective assistance of counsel. Specifically, Appellant argues that his trial counsel should have objected to the applicability of Article 38.371 of the Texas Code of Criminal Procedure as a basis for the admission of Rogers's testimony.

Generally, to determine whether Appellant's counsel rendered ineffective assistance, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694; *Hernandez*, 726 S.W.2d at 55.

Further, we must indulge a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance, and Appellant must overcome the presumption that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim.

10

App. 2000). "A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent." *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

Allegations of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Typically, the record on direct appeal is not sufficient to show that counsel's representation was so deficient as to overcome the presumption that counsel's conduct was reasonable and professional. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Mallett v. State*, 65 S.W.3d 59, 64–65 (Tex. Crim. App. 2001). In addition, if an appellant does not prove one component of the *Strickland* test, there is no need for the court to address the other. *Strickland*, 466 U.S. at 697.

Here, Appellant's trial counsel objected to the admission of the extraneous offense testimony and argued that the testimony was more prejudicial than probative. While the State and the trial court briefly mentioned Article 38.371 of the Texas Code of Criminal Procedure, the trial court's decision did not primarily rely on this article. Ultimately, the trial court admitted the testimony because it found that the evidence was admissible under Rules 403 and 404(b) of the Texas Rules of Evidence. Therefore, Appellant's counsel's objection was appropriate. Appellant has not shown that the failure to make an additional objection under Article 38.371 amounted to deficient performance.

As a result, Appellant has not met his burden, under the first prong of *Strickland*, to show that his trial counsel's performance fell below an objective standard of reasonableness. Therefore, we overrule Appellant's third issue on appeal.

11

We affirm the judgment of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


February 28, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.