

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00171-CR

MICHAEL DALE REIGHLEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 413th District Court
Johnson County, Texas[1]
Trial Court No. F49732, Honorable William C. Bosworth, Presiding

August 13, 2019

OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellant, Michael Dale Reighley, appeals his convictions for one count of online solicitation of a minor and two counts of criminal solicitation of a minor, and resulting jury-imposed sentences of twenty years' incarceration and a $10,000 fine for the online

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Tenth Court of Appeals. See TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Tenth Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

solicitation offense and ten years' incarceration and $10,000 fines for the criminal solicitation offenses.  We affirm the trial court's judgment.

## Factual and Procedural Background

On July 15, 2015, the Texas Attorney General's Office conducted a sting operation focusing on online solicitation of minors in Cleburne, Texas.  Appellant, who was thirty-seven years old on July 15, 2015, placed an ad in the "personals/casual encounters" section on the Craigslist website.  In the ad, appellant stated that he wanted to meet a female who was either "much younger (than 20 years of age)" or "much older (than 50 years of age)" for the purpose of, *inter alia*, performing oral sex on anyone that responded to his ad.  Don Adams, SWAT Commander for the Burleson Police Department, responded to appellant's ad using the Craigslist profile of "Brandi Jasper."  In his response, Adams identified Brandi as a fourteen-year-old girl.  After a series of messages in which appellant repeatedly propositioned Brandi to engage in sexual acts with him,[2] appellant arranged to meet Brandi at a designated location in Burleson.  When appellant arrived at the arranged meeting location, he was placed under arrest.

Appellant was subsequently indicted for the solicitation offenses.  During appellant's trial, police officers testified as to the events described above.  In investigating the case, Sheriff Andrew Riggs searched appellant's cell phone as authorized by a search warrant.  At trial and over appellant's objection, Riggs testified to finding a text message conversation in which appellant indicated that he had previously performed oral sex on a

---

[2] Specifically, appellant indicated that he wanted to perform oral sex on Brandi and penetrate her vagina with his fingers.  He also indicated that he wished to have Brandi perform oral sex on him.  From the context, it is apparent that these acts formed the purpose for which appellant went to meet Brandi.

2

fourteen-year-old girl. During appellant's case-in-chief, he testified that he believed that Brandi was not a minor but that she was engaging in an "age-play scenario." Following appellant's testimony, appellant offered the testimony of four opinion witnesses. During a hearing held outside the presence of the jury, the trial court excluded the testimony of all four witnesses. At the close of testimony, the jury returned a verdict finding appellant guilty of all three charged offenses. After a punishment hearing, the jury sentenced appellant to twenty years' incarceration for the online solicitation offense and ten years for each of the criminal solicitation offenses, and a $10,000 fine for all three offenses. Appellant timely filed the instant appeal.

By his appeal, appellant presents seven issues. Appellant's first four issues challenge the trial court's exclusion of four witnesses that appellant offered to testify as to their opinion regarding appellant's character. Appellant's fifth issue contends that the trial court erred by admitting evidence of appellant's bad character for the purpose of showing appellant acted in accordance with that character on the occasion in question. Appellant's sixth and seventh issues contend that the trial court erred in refusing to find subsection (d)(3) of Texas Penal Code section 33.021 unconstitutional because it improperly removes the State's burden to prove appellant's intent and deprived appellant of his right to present a defense that appellant was engaged in a fantasy.

Issues One through Four: Exclusion of Good Character Witnesses

Appellant contends, by his first four issues, that the trial court erred in excluding testimony regarding appellant's good character during the guilt-innocence phase of trial.

3

In a hearing outside the presence of the jury, appellant initially called Phillip Nottingham. Nottingham testified that he had known appellant since they were both around thirteen years old. They lost touch in early adulthood but had gotten back in touch between five to ten years before trial. After the two reconnected, they were in contact around once a month and often only through phone calls. Nottingham testified that he did not believe that appellant had the traits of a pedophile, never saw or heard appellant speak inappropriately about young girls, and has trusted and does trust appellant to be around Nottingham's minor daughters. The State objected to Nottingham's testimony on the bases that he was not qualified as an expert and such testimony regarding specific acts of good character is impermissible during the guilt-innocence phase of trial. Appellant responded that he believed that the State had opened the door to this testimony and that it is relevant rebuttal evidence relating to appellant's character. The trial court sustained the State's objections, specifically indicating that it thought that this testimony was appropriate only for punishment. Upon appellant's request, the trial court allowed the testimony to serve as an offer of proof.

Immediately after Nottingham was dismissed, appellant called Dayna Ly, appellant's fiancée. Ly testified that, in the two and a half years she had known appellant, she had never seen him act inappropriately or heard him state that he desired to be sexual with young girls. Ly also testified that she believed appellant to be of good character. The State again objected that the testimony was an impermissible attempt to offer specific acts of good character. Appellant responded, again contending that the State had opened the door. The trial court impliedly sustained the objection but accepted the testimony as an offer of proof.

4

Appellant then called Haileigh Dodd, the daughter of a former girlfriend of appellant. Dodd testified that appellant and her mother lived together when she was ten or eleven years old and that appellant did not touch or talk to her inappropriately and that he cared for her like she was his daughter. The State again objected that the testimony was simply identifying specific acts of good character. Appellant voiced the same response. The trial court again ruled that the testimony was not admissible during guilt-innocence.

Finally, appellant prepared to offer the testimony of appellant's daughter. However, before he could do so, the trial court asked if this testimony was going to be "basically that same thing, character." Appellant responded in the affirmative. Before any of the witness's testimony was presented, the trial court stated, "But if your line of questioning is the same line of questioning as the last two witnesses, then I'd reserve her for the . . . Punishment Phase." Appellant accepted this statement without requesting an opportunity to make an offer of proof.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). We will not disturb the trial court's ruling if the ruling is within the zone of reasonable disagreement. *Id.*

Generally, character evidence is not admissible to show that a person acted in conformity with that character trait on a particular occasion. TEX. R. EVID. 404(a); *Melgar v. State*, 236 S.W.3d 302, 306 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). However, a defendant in a criminal case "is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense, when

5

that character trait is relevant to the offense." *Melgar*, 236 S.W.3d at 306-07; *Moody v. State*, Nos. 01-05-00395-CR, 01-05-00396-CR, 01-05-00397-CR, 01-05-00398-CR, 2006 Tex. App. LEXIS 9788, at *8 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (mem. op., not designated for publication). A character trait is relevant if it is "one that relates to a trait involved in the offense charged or a defense raised." *Melgar*, 236 S.W.3d at 307 (quoting *Spector v. State*, 746 S.W.2d 946, 950 (Tex. App.—Austin 1988, pet. ref'd)). If evidence of a person's character or character trait is admissible, proof may be made through reputation or opinion testimony. TEX. R. EVID. 405(a); *Moody*, 2006 Tex. App. LEXIS 9788, at *8. But, specific instances of conduct may not be admitted to establish an inference that the accused did or did not commit the charged offense. *Valdez v. State*, 2 S.W.3d 518, 519 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Schmidt v. State*, 449 S.W.2d 39, 40 (Tex. Crim. App. 1969)).

In a prosecution for a crime of violence, the defendant's character for peacefulness is relevant because evidence establishing that a defendant possesses a peaceful character makes it less likely that he committed the crime charged. *Melgar*, 236 S.W.3d at 307. A defendant's reputation for peacefulness or non-aggressive behavior is an appropriate inquiry in a murder prosecution. *Valdez*, 2 S.W.3d at 520. Under Rule 404(a)(1)(A), a defendant charged with sexual assault of a child is entitled to offer evidence of his good character for "moral and safe relations with small children or young girls." *Wheeler v. State*, 67 S.W.3d 879, 882 (Tex. Crim. App. 2002). However, the status of being a murderer or a pedophile is not a "character trait." *Id.* at 882 n.2.

Our sister courts have concluded that the type of evidence offered by appellant in this case is not admissible. In *Valdez*, the court refused to allow the defendant's brother

6

and neighbor to testify that appellant had a good reputation in the community for being "a nonpedophile" because "unlike a person's reputation for the moral treatment of children, being a 'nonpedophile' is not evidence of a person's character or character trait." *Valdez*, 2 S.W.3d at 519-20. In *Hernandez*, the court rejected testimony regarding whether the defendant was the "kind of person" who would molest children because, rather than showing a good character trait, such testimony attempts to show that appellant "was not known to have committed the type of crime for which he was charged in the past." *Hernandez v. State*, No. 05-13-00202-CR, 2014 Tex. App. LEXIS 162, at *8-9 (Tex. App.—Dallas Jan. 7, 2014, no pet.) (mem. op., not designated for publication) (quoting *Valdez*, 2 S.W.3d at 520). In *Fernandez*, the court upheld the trial court's sustaining of the State's objections to questions asking whether the defendant had ever touched a different child inappropriately and whether a witness would "be afraid to leave your daughter with" the defendant. *Fernandez v. State*, No. 14-09-00369-CR, 2010 Tex. App. LEXIS 2628, at *14-18 (Tex. App.—Houston [14th Dist.] Apr. 15, 2010, no pet.) (mem. op., not designated for publication). These cases establish that testimony of a defendant's character that is derived from specific instances of conduct is inadmissible to show an inference that the defendant did not commit the offense for which he is charged.

In the present case, appellant sought to elicit testimony from Nottingham that appellant did not exhibit the "traits of being a pedophile," Nottingham had not seen or heard appellant behave inappropriately toward young girls, and that Nottingham would trust appellant around his daughters. This is the same sort of testimony that was deemed inappropriate in *Fernandez* and *Valdez*. *See Fernandez*, 2010 Tex. App. LEXIS 2628, at *14-18; *Valdez*, 2 S.W.3d at 520. Appellant then sought to admit testimony from Ly that

7

she had never seen appellant act inappropriately toward young girls and that he had never expressed a desire to be sexual with young girls. This is the same type of testimony that was found to be inappropriate in *Hernandez*. *See Hernandez*, 2014 Tex. App. LEXIS 162, at *8-9. Appellant also offered the testimony of Dodd that appellant did not act inappropriately toward her when she was a young girl. This is the same sort of testimony that was determined to be inappropriate in *Fernandez*. *See Fernandez*, 2010 Tex. App. LEXIS 2628, at *14-18. Finally, appellant attempted to call his daughter. However, the substance of her testimony was not offered as part of appellant's offer of proof and, as such, any error in the trial court's exclusion of her testimony was not preserved.[3] *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009).

Because the testimony of the first three good-character witnesses offered by appellant was improper character evidence derived from specific instances of appellant's prior conduct, the trial court did not abuse its discretion in excluding the testimony. Appellant's first three issues are, therefore, overruled. Because the fourth good-character witness's testimony was not properly preserved, any error in the trial court's ruling is not properly presented to this Court. Appellant's fourth issue is overruled.

Appellant's Fifth Issue: Character Conformity Evidence

Appellant's fifth issue contends that the trial court erred by admitting evidence of appellant's bad character for the purpose of showing appellant acted in accordance with that character on the occasion in question. Specifically, appellant objects to the

---

[3] While appellant's objection to the exclusion of this testimony was not properly preserved for our review, appellant did indicate that his daughter's testimony would have been consistent with the line of questioning made to the two prior witnesses and we have determined that those lines of questioning are inappropriate.

admission of testimony from Andrew Riggs, an investigator with the Johnson County Sheriff's Office, relating that a manual investigation of appellant's phone uncovered a text message conversation in which appellant stated that he had previously performed oral sex on a fourteen-year-old girl. Appellant objected and argues on appeal that the testimony violates Texas Rules of Evidence 403 and 404(b).[4]

As above, the applicable standard of review for the admission or exclusion of evidence is abuse of discretion. *Harris v. State*, 152 S.W.3d 786, 793 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). This means that we will uphold the trial court's ruling so long as it falls within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). This standard applies in the same manner in the context of the admission or exclusion of extraneous offense evidence and an appellate court "owes no less deference to the trial judge in making this decision than it affords him in making any other relevancy determination." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A court of appeals cannot simply substitute its own decision for the trial court's. *Id.*

Under Texas Rule of Evidence 401, evidence is relevant if it makes the existence of a fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401; *Moses*, 105 S.W.3d at 626. While relevant evidence is generally admissible, *see* TEX. R. EVID. 402, that is not always the case. *Moses*, 105 S.W.3d at 626.

---

[4] Appellant timely objected to each instance during which Riggs testified about the text message conversation. However, the trial court denied appellant's request for a running objection without explanation and, at one point, stated that "[t]he evidence has already come in so the objection is untimely." Our review of the record reflects that appellant either timely objected to the admission of this evidence or the need for a timely objection was obviated by the trial court's implied ruling. *See* TEX. R. APP. P. 33.1.

One exception can be found in Rule 404(b).  Because a defendant should be tried only for the crime he is charged with committing and not for having criminal propensities, extraneous offense evidence is generally inadmissible.  *Moses*, 105 S.W.2d at 626.  Rule 404(b) prohibits the use of evidence of a crime, wrong, or other act to prove a person's bad character and that, on a particular occasion, the person acted in accordance with that character.  TEX. R. EVID. 404(b)(1).  However, the Rule allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity.  TEX. R. EVID. 404(b)(2); *Moses*, 105 S.W.3d at 626.  Some examples of relevance apart from character conformity include intent, absence of mistake, or lack of accident.  TEX. R. EVID. 404(b)(2).  Uses such as mistake and accident are admissible in rebuttal of a defensive theory.  *Moses*, 105 S.W.2d at 626.

Another exception to the general admissibility of relevant evidence is found in Rule 403.  Rule 403 provides that, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."  TEX. R. EVID. 403.  Rule 403 requires the exclusion of evidence "only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996) (quoting *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992)).  Under Rule 403, the trial court is to consider several relevant factors, including:

1. how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable;
2. the extraneous offense's potential to impress the jury in some irrational but indelible way;

3. the trial time that the proponent will require to develop evidence of the extraneous misconduct; and

4. the proponent's need for the extraneous transaction evidence.

*Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (quoting *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996)).

Appellant argues that none of the Rule 404(b) exceptions apply to Riggs's testimony and that it was premature as rebuttal evidence since appellant had not yet put intent, mistake, or accident in issue. However, during appellant's opening statement, appellant's counsel stated that appellant did not intend to meet and have sexual contact with a fourteen-year-old girl and that appellant believed that he was communicating with an adult who was role-playing as an underage girl. A defendant can raise defensive issues in his opening statement and, when he does so, extraneous acts evidence that rebuts those defensive theories may be admissible under the exceptions identified in Rule 404(b)(2). *Powell v. State*, 63 S.W.3d 435, 439-440 (Tex. Crim. App. 2001). Here, the State specified that Riggs's testimony was offered to establish appellant's intent, absence of mistake, and lack of accident. We conclude that each of these purposes for admission of the evidence was implicated by appellant's opening statement and, therefore, the trial court did not abuse its discretion in admitting the evidence over appellant's objection.

However, a determination that extraneous act evidence is admissible as an exception to Rule 404(b)'s prohibition does not end the inquiry. Appellant contends that Riggs's testimony should have been excluded under Rule 403. However, in his appellate brief, appellant does not explain how the probative value of Riggs's testimony was substantially outweighed by the danger of unfair prejudice. Rather, appellant indicates

that he preserved the issue by way of timely objection and that the trial court was obligated to articulate its basis for admission of the evidence. While a trial court's on-record articulation of its basis for admitting evidence under Rule 403 would be helpful, it is not required. *Grider v. State*, 69 S.W.3d 681, 688 (Tex. App.—Texarkana 2002, no pet.) (citing *Montgomery*, 810 S.W.2d at 397).

We conclude that the trial court did not abuse its discretion in admitting Riggs's testimony over appellant's Rule 403 objection. The evidence of a text conversation that occurred two days prior to the date of appellant's attempted meeting with Brandi in which appellant bragged that he had previously performed oral sex on a fourteen-year-old is compelling evidence of appellant's intent. Because the testimony was presented without any further elaboration, it was unlikely to have impressed the jury in an irrational yet indelible way. The evidence was developed very quickly with Riggs essentially only testifying that appellant "performed oral sex on the 14-year-old girl but did not penetrate her vagina." No additional information was provided regarding the contents of the text message conversation. Finally, this evidence was needed by the State to rebut appellant's primary defensive theory that, at the time he solicited the meeting with Brandi, he did not intend to have sexual contact with her. We are to reverse the trial court's ruling under Rule 403 "rarely and only after a clear abuse of discretion." *Montgomery*, 810 S.W.2d at 392. In this case, we conclude that the trial court did not abuse its discretion in admitting Riggs's testimony over appellant's Rule 403 objection.

For the foregoing reasons, we overrule appellant's fifth issue.

Issues Six and Seven: Anti-Defensive Provisions

By his sixth and seventh issues, appellant contends that the trial court erred in refusing to find that subsection (d) of section 33.021 of the Texas Penal Code is unconstitutional because it removes the State's burden to prove the defendant's intent and it deprives defendants of the right to present a defense based on fantasy. Appellant's issues essentially argue that subsections (c) and (d) of section 33.021 are facially unconstitutional because it is inconsistent for subsection (c) to require that the solicitation occur with the actor's "intent that the minor will engage in sexual contact . . . with the actor or another person" while also providing that it is not a defense that "the actor was engaged in a fantasy at the time of commission of the offense." Act of May 25, 2005, 79th Leg., R.S., ch. 1273, § 1, 2005 Tex. Gen. Laws 4049, 4050.[5]

The constitutionality of a statute is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Id.* at 14-15. The burden to show that a statute is unconstitutional is on the party challenging the statute. *Id.* at 15. When addressing a facial challenge, the challenger must show that the statute operates unconstitutionally in all possible circumstances. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). In a facial challenge, we are to consider the statute only as it is written and not how it operates in practice. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908-09 (Tex. Crim. App. 2011). It is extremely difficult to prove a

---

[5] The Texas Legislature amended Section 33.021 to remove subsections (d)(2) and (3). *See* Act of May 22, 2015, 84th Leg., R.S., ch. 61, § 2, 2015 Tex. Gen. Laws 1036, 1036. Because appellant was charged with committing the offense when the prior version of the law was applicable, our analysis will be on the constitutionality of that version of the law. All subsequent references to "section 33.021," will be to the former version of Texas Penal Code section 33.021.

facial challenge to the constitutionality of a statute because we are to presume that the law enacted by the legislature is constitutional. *Id.* at 909.

The offense of online solicitation of a minor at the time applicable to the case against appellant required the State to prove that appellant knowingly solicited, over the internet or by other enumerated electronic means, a minor to meet another, including the actor, with the intent that the minor will engage in some type of sexual contact with the actor or another person. § 33.021(c). The legislature also precluded certain defenses. Specifically, it is not a defense that "the actor was engaged in a fantasy at the time of commission of the offense." § 33.021(d)(3). Appellant contends that subsections (c) and (d) contradict each other on intent and this contradiction relieves the State of its burden to prove intent while denying appellant the opportunity to present a defense.

In *Ex parte Lo*, the Court of Criminal Appeals noted that section 33.021(c) prohibits and punishes an actor for the act of soliciting a minor online. *Ex parte Lo*, 424 S.W.3d at 16-17. "[I]t is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense." *Id.* (emphasis in original).

In a case specifically addressing the anti-defensive provisions found in section 33.021(d), the San Antonio Court of Appeals concluded that these anti-defensive provisions do not remove the State's obligation to prove the defendant's intent nor do they prohibit the defendant from presenting a defense. After discussing the Court of Criminal Appeals' identification in *Ex parte Lo* that it is the conduct of soliciting a minor that is made criminal by the statute, the San Antonio court reasoned that,

> "[T]he crime of solicitation of a minor on the internet is complete at the time
> of the internet solicitation, rather than at some later time if and when the

actor actually meets the child." [*Ex parte Lo*, 424 S.W.3d at 23.] The crime of soliciting a minor under section 33.021(c) is committed, and is completed, at the time of the request, i.e., the solicitation. *Id.* The requisite intent arises within the conduct of soliciting the minor, and must exist at the time of the prohibited conduct of solicitation. *Id.* Indeed, it is the requirement that the defendant must solicit "with the intent that the minor will engage in sexual contact" that operates to make otherwise innocent conduct, i.e., soliciting a minor to meet, into criminal conduct. It follows then, that for purposes of a subsection (c) solicitation offense, it does not matter what happens after the solicitation occurs because the offense has been completed; it does not matter whether the solicited meeting actually occurs, or that the defendant did not intend for the meeting to actually occur, or that the defendant was engaged in a fantasy at the time of the solicitation. TEX. PENAL CODE ANN. § 33.021(d). Thus, subsection (d) does not conflict with or negate the intent element of the solicitation-of-a-minor offense defined by (c).

*Ex parte Zavala*, 421 S.W.3d 227, 232 (Tex. App.—San Antonio 2013, pet. ref'd).

Likewise, when this Court reviewed the issue raised by appellant, we concluded that the statute is not unconstitutional due to any internal inconsistency. *Ex parte Fisher*, 481 S.W.3d 414, 421 (Tex. App.—Amarillo 2015, pet. ref'd). After identifying that *Ex parte Wheeler*, 478 S.W.3d 89, 96 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd), and *Ex parte Victorick*, No. 09-13-00551-CR, 2014 Tex. App. LEXIS 5429, at *19-20 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication), determined that the plain language of the statute leads to the conclusion that the applicable *mens rea* is focused on the time of the solicitation, this Court agreed with this construction and explained,

We conclude that *Wheeler* and *Victorick* are correct in their respective conclusions. We adopt these opinions for two reasons. First, the societal issue being addressed, the solicitation of minors to engage in sexual activity, is an area of significant importance. *See Ex parte Lo*, 424 S.W.3d at 21 (noting that "[t]here is no question that the State has a right—indeed a solemn duty—to protect young children from the harm that would be inflicted upon them by sexual predators"). Second, when faced with two conflicting constructions of a statute, one of which sustains its validity, we apply the interpretation that sustains that validity. *See Ex parte Wheeler*,

478 S.W.3d [at 96]. The prohibitions against raising the defenses enumerated in section 33.021(d) apply only post-solicitation. *See id.* That is to say, the accused will not be entitled to a defensive charge that: (1) the meeting did not occur; (2) the actor did not intend for the meeting to occur; or (3) the actor was engaged in fantasy at the time of commission of the offense.

*Ex parte Fisher*, 481 S.W.3d at 421.

We have found no opinion in which the Tenth Court of Appeals has addressed appellant's constitutional contentions. *See* TEX. R. APP. P. 41.3 (if a conflict exists between precedent of the transferor court and this Court, appeal will be decided in accordance with the transferor court's precedent).

We conclude that the majority, if not all, of the Texas appellate courts that have addressed appellant's contention that section 33.021(d)'s anti-defensive provisions are unconstitutional have rejected the same and concluded that the provisions are sound. Consequently, we overrule appellant's sixth and seventh issues.

Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Publish.

16